UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

LAURA ANN HOPE,

                      Plaintiff,         Civil Action No.: 14-11114
                                          Honorable Linda V. Parker
              v.                                Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 12]**

Plaintiff Laura Hope brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") did not err in either his credibility determination or his Step Four analysis, and that his decision is supported by substantial evidence of record. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Hope's motion [10] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II.   REPORT

### A.   Procedural History

On October 20, 2009, Hope filed an application for DIB, alleging disability as of July 14, 2009. (Tr. 139-40). The claim was denied initially on December 15, 2009. (Tr. 72-91). Thereafter, Hope filed a timely request for an administrative hearing, which was held on June 9, 2011, before an ALJ. (Tr. 44-71). Hope, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). *Id.* In a written decision dated June 23, 2011, the ALJ found Hope not disabled. (Tr. 28-43). On January 14, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review. (Tr. 1-7). Hope filed for judicial review of the final decision on March 14, 2014. [1].

### B.   Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Plaintiff's Testimony and Subjective Reports

Hope reported that the conditions rendering her disabled include common variable immune deficiency ("CVID"), which prevents her from fighting off infections and causes her to be constantly fatigued and sick with various ailments such as bronchitis and sinus infections. (Tr. 171). She also reported being disabled as a result of a lung disorder, arthritis, and depression and anxiety. *Id.* She reportedly stopped working as a secretary due to her conditions. (Tr. 171-72).

Hope reported that her day consists of watching television and sometimes playing a game on the computer. (Tr. 186). She also crochets and crafts as hobbies. (Tr. 198). She is able to care for herself and cook light meals a few times a week, do some laundry, and drive her daughter to work. (Tr. 187-88; 194). She shops for groceries a couple of times a week for 1-2

hours at a time. (Tr. 189; 197). She also attends counseling weekly and frequently spends time with her family. (Tr. 190; 198). She sleeps more, somewhere between 12-14 hours a night and feels constantly fatigued. (Tr. 187). She naps daily for approximately two hours. (Tr. 60-61).

Hope testified that she is able to stand and/or walk for 20 minutes at a time before needing to rest for a few minutes, lift and carry up to 10 pounds five paces, and bend at the waist, but not at the knees. (Tr. 52-54). She reported also having trouble squatting and climbing stairs. (Tr. 191). She testified that she has difficulty remembering things and concentrating, although she can follow spoken and written instructions without difficulty. (Tr. 59-61; 190-92; 199-200). She is capable of picking up small items with both hands and reaching above her head. (Tr. 53). She testified that she feels most comfortable with her feet elevated and with moist heat applied to her back. (Tr. 61). A third-party function report completed by her husband generally corroborated Hope's reports. (Tr. 194-201).

        *2.*      *Medical Evidence*

Hope does not take direct issue with the ALJ's evaluation of the medical evidence in this case. The Court has thoroughly reviewed the record, and will discuss the relevant evidence within the analysis portion of this Report and Recommendation.

    **D.**    **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ concluded that Hope was not disabled within the meaning of the Act. At Step One he determined that Hope had not engaged in substantial gainful activity since her alleged onset date. (Tr. 33). At Step Two, the ALJ found that Hope suffered from the following severe impairments: CVID, chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, degenerative joint disease, major depressive disorder and generalized anxiety disorder. *Id.* At Step Three, the ALJ concluded that

none of Hope's severe impairments, either alone or in combination, met or medically equaled a listed impairment. In making this finding, the ALJ specifically discussed the criteria of Listing 12.04 (Affective Disorders), and determined that Hope had no restriction in activities of daily living, mild difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation of extended duration. (Tr. 34).

Next, the ALJ assessed Hope's RFC, finding her capable of sedentary work with additional limitations. (Tr. 35). Specifically, he found she could lift and carry 10 pounds both occasionally and frequently, could stand, sit or walk for six hours in an eight-hour day in 30 minute increments, must have a sit/stand option at will, could frequently use hand and foot controls, feel, finger, handle objects, reach, reach overhead, climb ramps and stairs, balance, stoop and bend, could occasionally kneel, could never climb ladders, scaffolds or ropes, could never crouch or crawl, must avoid concentrated exposure to chemicals, fumes, extreme temperatures, dust, dander and mold, must avoid all exposure to unprotected heights, hazardous machinery and vibrations, requires a footstool to reduce discomfort, could perform skilled and semi-skilled tasks, could frequently interact with the general public, supervisors and co-workers, would be off task 4-5% of the workday with 2-3% loss of productivity and could frequently respond to changes in the work setting. (Tr. 35).

In making this determination, the ALJ gave great weight to the majority of the opinion of Hope's psychiatrist, Dr. Ralph. (Tr. 37). Dr. Ralph opined that Hope had no limitation in her ability to carry out one or two-step instructions and only mild limitations in her ability to remember, understand and carry out technical or complex instructions. *Id.* Dr. Ralph also found that Hope was only mildly limited in her ability to interact with supervisors and co-workers and

moderately limited in her ability to interact with the general public. *Id.* She was also moderately limited in her ability to maintain concentration and attention for at least two hours. *Id.* However, the ALJ found Dr. Ralph's opinion that Hope was markedly limited in her ability to withstand the stress and pressures of an 8-hour workday unsupported by the evidence of record, and thus the ALJ gave this part of the opinion little weight. *Id.*

Based on this RFC, and with the assistance of VE testimony, the ALJ concluded Hope could perform her past relevant work as a secretary and administrative assistant. (Tr. 38). The VE testified that a hypothetical claimant with the above-RFC could perform the past relevant jobs of secretary and administrative assistant, but not executive secretary. (Tr. 66). The ALJ also made an alternative Step Five finding, concluding, again with the help of VE testimony, that a hypothetical claimant with Hope's RFC could perform the occupations of hotel front desk clerk (5,100 jobs in the state), order clerk (4,700 jobs), and telemarketer (7,200 jobs), which represented a significant number of jobs in the national economy. (Tr. 39). Therefore, Hope was not disabled. (Tr. 40).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Hope essentially makes two arguments, one attacking the ALJ's evaluation of her credibility (which is styled as a challenge to not only her credibility, but to the ALJ's evaluation of the medical records and his formulation of a hypothetical question, despite the fact that she fails to cite even one piece of medical evidence in her entire brief), and a challenge to the way the ALJ made his Step Four determination that she was capable of returning to her past relevant work.  The Court takes each argument in turn.

*1.     Credibility*

Hope claims that the ALJ erred in formulating his hypothetical question because he failed to take into account all of her credible impairments.  While couched as an argument challenging the hypothetical questions the ALJ posed, Hope is really challenging the ALJ's evaluation of her credibility, as the only record evidence she cites in support of her argument is her own subjective testimony, and also because the ALJ ultimately found her not disabled at Step Four, rather than Step Five of the process.  Specifically, Hope argues that the ALJ failed to account for her testimony that she could only stand and/or sit for 20 minutes at a time before needing to change position and stretch, that she suffers from fatigue causing her memory problems, that she needs to nap, elevate her feet to waist level, and that she would be off task 20% of the day.  [10 at 8, 10].  Her arguments are unpersuasive.

The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The law is clear that an ALJ is not required to simply accept the testimony of a claimant if it conflicts

8

with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Thus, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Contrary to Hope's arguments, the ALJ did in fact appropriately consider her testimony, and ultimately rejected certain of her subjective allegations as being not entirely credible in light of the objective medical evidence and her own daily activities. In addition, the ALJ incorporated Hope's credible subjective limitations into the RFC he ultimately formulated. The ALJ discussed Hope's testimony and subjective statements that she could sit for 20 minutes at a time and stand for between 20-30 minutes, and that she becomes fatigued and overwhelmed easily, which causes short-term memory problems and makes concentration and completing tasks difficult. (Tr. 35). He also noted her claims that she must take daily naps due to fatigue, must sit with her feet up, and that she was let go of her 20-hour-a-week part-time job due to her inability to maintain that schedule. *Id.*

In finding Hope's allegations and testimony less than fully credible, the ALJ noted that the objective medical evidence did not support these allegations. Specifically, the ALJ noted that with regard to Hope's CVID and COPD, which she alleges are the main cause of her fatigue (Tr. 59-60), the medical records showed little treatment for these conditions after February 2010. (Tr. 36). Indeed, although in January 2010, Hope reported worsening fatigue, her primary care

physician, Dr. Vogel, noted she was due for an immunoglobulin treatment for her CVID at the time. (Tr. 541-42). By February of that year, Hope reported feeling better, with more energy and clearer thinking, and began thinking about working part time again. (Tr. 537-38). She also reported having driven to Wisconsin and back recently. *Id.* By May of that year, she was working part-time and able to maintain the schedule, although she did report some tiredness. (Tr. 586-89).

In June, she reported increased fatigue despite having received an immunoglobulin injection the month prior. (Tr. 619-20). However, the following week she reported feeling as if she was becoming able to maintain her 20-hour a week job. (Tr. 617-18). Dr. Vogel recommended that she gradually increase exercise, as well as quit smoking, which she always had been unable to do. *Id.* A week later she reported sinus congestion and a cough, was diagnosed with sinusitis and prescribed an antibiotic. (Tr. 615-16). She had another bout of sinusitis in July and was again prescribed an antibiotic. (Tr. 611-12). Her symptoms continued into August when she was scheduled to see an allergist. (Tr. 609-10). She had another bout in October 2010, and was again prescribed an antibiotic. (Tr. 607-608). However, by November 2010, her interstitial lung disease was considered to be stable, and by January 2011, her CVID was also found to be stable. (Tr. 601-604). In February 2011, although diagnosed with bronchitis, a chest x-ray was normal. (Tr. 594; 597-98). There are no further treatment notes regarding these conditions in the record before the ALJ.[1] Further, there was no medical opinion

---

[1] There are additional treatment notes in the record, however those notes were submitted in the first instance to the Appeals Council, and not to the ALJ. Further, Hope does not argue that the Court should consider these notes as "new and material evidence" under sentence six of the Act. 42 U.S.C. § 405(g). As such, the Court cannot consider them at this level of review. *See Elliott v. Apfel*, 28 Fed. Appx. 420, 423 (6th Cir. 2002) ("If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ."); *See also Osburn v. Apfel*, 1999 WL 503528, at *4 (6th Cir. July 9, 1999) ("[W]hen the Appeals Council

evidence regarding Hope's physical limitations due to these conditions.

The ALJ also noted that Hope's activities of daily living did not support the level of limitation to which she testified. (Tr. 37-38). He noted that both Hope and her husband reported that she had no difficulty with personal care, was able to prepare meals, could perform household chores and grocery shop for multiple hours at a time, and that she was able to perform her hobbies without interference from her conditions. *Id.* Finally, the ALJ noted that, even though it was not the same as being able to work full-time, Hope successfully worked part time for almost a year after the alleged onset date. *Id.; see also*, 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ noted that, although she allegedly was terminated for her absences, her work activity suggests that her conditions were not as disabling as alleged. (Tr. 37-38).

Despite finding Hope less than fully credible regarding the limitations imposed by her physical conditions, the ALJ nevertheless limited her ability to lift to only ten pounds, her ability to sit, stand and walk to a total of six hours a day in 30-minute increments, required a sit/stand option as well as a footstool to reduce discomfort, prohibited her from crouching or crawling, and limited her from exposure to chemicals, fumes, extreme temperatures and hazards. (Tr. 35). He also included a limitation that she would be off-task for 4-5% of the day with a 2-3% loss of productivity, presumably to account for her difficulty in concentrating and completing tasks. Thus, contrary to Hope's arguments, the ALJ did consider and found mostly supported, Hope's claimed limitations in standing, sitting and walking, including needing a footstool. Further,

---

denies review, the decision of the ALJ becomes the final decision of the Commissioner ... Since we may only review evidence that was available to the ALJ to determine whether substantial evidence supported her decision, we cannot consider evidence newly submitted on appeal after the hearing before the ALJ.").

contrary to her argument that the ALJ's RFC required her to crouch, which she testified she could not do, the ALJ specifically included a limitation for no crouching. (Tr. 35; 52). With regard to napping, while the ALJ did not specifically address this claimed limitation, his discussion regarding the relatively little treatment Hope had received for her CVID and COPD during the latter portion of the disability period reflects that he did not find her conditions were as severe as she alleged and did not require daily napping.

The ALJ also considered Hope's depression and anxiety. He noted that while early treatment records showed that Hope struggled with her conditions, including an emergency appointment after she lost her job, by February 2010, the treatment records showed she was feeling hopeful, had more energy and was applying for work. (Tr. 36-37; 352-77; 566-82). The ALJ also noted that later treatment records showed continued improvement, including that Hope reported holding up well at work, improving her coping skills and that her medications were helping. (Tr. 37; 581-90; 628-36). The treatment notes further reflected generally euthymic moods and that Hope seemed to be in good spirits despite several increased stressors that caused a recurrence of symptoms. *Id.* The ALJ further noted that at all appointments, Hope presented with logical, well-organized thinking, adequate grooming and hygiene, normal speech and normal psychomotor activity. *Id.*

In addition, the ALJ noted that Hope's husband had reported that she could pay attention for a couple of hours at a time, and had no trouble following written or spoken instructions. (Tr. 37). Hope and her husband both reported that she continued to be able to engage in hobbies such as crocheting, reading, watching movies and crafting as she did before her alleged onset date. (Tr. 37-38).

Thus, contrary to Hope's claim of error, the ALJ properly considered her subjective

12

allegations, weighed them against the other evidence of record, and incorporated those that were supported by substantial evidence into his RFC assessment. For these reasons, the Court finds that the ALJ's evaluation of Hope's credibility was proper and is supported by substantial evidence of record.[2]

### 2. *Adequacy of Hypothetical Question*

Hope parlays her credibility argument into one about the adequacy of the ALJ's hypothetical question to the VE, although she does not challenge the hypothetical beyond the fact that it does not account for the subjectively reported limitations of sitting, standing, walking, remembering, napping, elevating feet and remaining on task. As discussed above, the ALJ had good reasons for rejecting certain of Hope's subjective allegations of limitation, and crafted an RFC and hypothetical that took into account many of her subjective claims (including her need to elevate her feet, change positions, and difficulty remaining on task) as well as the objective medical record and Hope's activities of daily living, including her work record. An ALJ is entitled to rely upon the testimony of a VE in response to hypothetical questions to the extent

---

[2] The ALJ further considered the medical source statement of Hope's psychologist Dr. Ralph, who opined that she had no limitation in her ability to carry out one or two-step job instructions, and only mild limitations in her ability to understand, remember, and carry out technical or complex instructions. (Tr. 654). Dr. Ralph also reported that Hope was mildly limited in her ability to interact with supervisors and co-workers and moderately limited in her ability to interact with the general public. (*Id.*). Dr. Ralph reported that Hope was moderately limited in her ability to maintain concentration and attention for at least two hours. (*Id.*). Finally, he opined that she was markedly limited in her ability to withstand the stress and pressures of an 8-hour workday. (*Id.*). The ALJ gave Dr. Ralph's opinion great weight except for the portion regarding Hope's ability to withstand the stresses of a workday. (Tr. 37; 654). The ALJ gave that latter portion little weight, citing the fact that Hope had worked part-time until recently, that her termination was based on absences from her alleged physical, rather than mental, conditions, and that Dr. Ralph's own records had shown an improvement in Hope's depression and anxiety symptoms. (Tr. 37). Although Hope mentions the treating physician rule in her brief, she does not specifically challenge the ALJ's consideration of this opinion evidence, and the Court finds that the ALJ's weighing of this evidence is supported by good reasons and substantial evidence of record.

those questions accurately portray the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). At the same time, an ALJ is only required to pose those hypothetical limitations that she finds credible. *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). Here, that is exactly what the ALJ did, and the Court finds that the limitations contained in Hope's RFC are supported by substantial evidence of record and should be affirmed.

### 3. Step Four Determination

Hope makes two arguments regarding the ALJ's Step Four determination. First, Hope argues that the ALJ erred at Step Four by impermissibly delegating to the VE the task of determining whether she could perform her past relevant work. Alleging that "there are no cases directly on point in this District or Circuit" as to this argument [10 at 9], Hope relies principally on decisions from other jurisdictions. Contrary to Hope's assertion, however, there have been at least seven decisions in this District alone that have specifically rejected her Step Four argument. *See Felder v. Comm'r of Soc. Sec.*, No. 13-12573, 2014 U.S. Dist. LEXIS 105533 (E.D. Mich. July 11, 2014) *adopted by* 2014 U.S. Dist. LEXIS 104320 (E.D. Mich. July 31, 2014); *McDonald v. Comm'r of Soc. Sec.*, No. 13-12312, 2014 U.S. Dist. LEXIS 67071 (E.D. Mich. Mar. 25, 2014) *adopted by* 2014 U.S. Dist. LEXIS 66025 (E.D. Mich. May 14, 2014); *Morrow v. Comm'r of Soc. Sec.*, No. 13-11913, 2014 U.S. Dist. LEXIS 65288 (E.D. Mich. May 14, 2014); *Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 U.S. Dist. LEXIS 28243 (E.D. Mich. Jan. 22, 2014) *adopted by* 2014 U.S. Dist. LEXIS 27778 (E.D. Mich. Mar. 5, 2014); *Lopez v. Comm'r of Soc. Sec.*, No. 13-10732, 2013 U.S. Dist. LEXIS 172628 (Nov. 18, 2013) *adopted by* 2013 U.S. Dist. LEXIS 172542 (E.D. Mich. Dec. 9, 2013); *Greene v. Comm'r of Soc. Sec.*, No. 12-

14434, 2013 U.S. Dist. LEXIS 150969 (E.D. Mich. Sept. 24, 2013) *adopted by* 2013 U.S. Dist. LEXIS 150028 (E.D. Mich. Oct. 18, 2013); *LaPorte v. Comm'r of Soc. Sec.*, No. 12-12398, 2013 U.S. Dist. LEXIS 128302 (E.D. Mich. Aug. 14, 2013) *adopted by* 2013 U.S. Dist. LEXIS 127797 (E.D. Mich. Sept. 9, 2013). As these and other courts have held, an ALJ, while not ***required*** to use the assistance of a VE at Step Four, nevertheless has the ***discretion*** to do so to aid in determining whether a hypothetical person in the claimant's position could return to his or her past relevant work. *See Greene*, 2013 U.S. Dist. LEXIS 150969 at *12 *citing Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Mays v. Barnhart*, 78 Fed. Appx. 808, 813-814, (3rd Cir. 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"); *Merkel v. CSS*, No. 07-11171, 2008 U.S. Dist. LEXIS 57555 (E.D. Mich. July 29, 2008) (noting that "the ultimate responsibility for making the necessary findings at [Step Four] rests with our adjudicators . . . it is appropriate for our adjudicators to consider evidence from a VE, VS . . ."); *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).[3]

Second, Hope claims that the ALJ offered no specific findings related to her RFC, the physical and mental demands of her past jobs, or whether her RFC would permit her to return to such a job. [10 at 8-9]. As the Commissioner properly notes, however, the record in this matter contained Exhibit 9E, which contained detailed information about Hope's past relevant work, including each position's: Dictionary of Occupational Titles codes; reasoning, math, language

---

[3] In fact, in the one Eastern District of Michigan case on which Hope relies, *Dodds v. Comm'r. of Soc. Sec.*, No. 01-72190, 2002 U.S. Dist. LEXIS 14901, at *9 (E.D. Mich. June 30, 2002), the court, while noting that "the claimant is the 'primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work,'" concluded only that the Step 4 inquiry therefore "does not ***require*** the use of vocational testimony," *Dodds*, at *9 (emphasis added), not that it would be ***improper*** for the ALJ to seek the VE's testimony as to that matter.

and skill levels; and physical demands. (Tr. 62-63). Thus, the ALJ had before him meaningful evidence that could properly inform his conclusions about the physical and mental demands of Hope's prior work, and her ability to meet those demands. The ALJ additionally solicited VE testimony as to the exertional and non-exertional demands of Hope's past work, and elicited testimony about whether a hypothetical claimant in Hope's position could continue to perform those jobs in light of the RFC assessment, which, as noted above, the ALJ adequately explained. (Tr. 62-67). The VE testified in the affirmative, and the ALJ properly relied on that testimony in determining that Hope was capable of returning to her past relevant work as a secretary or administrative assistant. *Id.* As the *Morrow* court noted, there is "nothing improper about this mode of analysis." *Morrow*, 2014 U.S. Dist. LEXIS 65288 at *22.

In sum, the Court finds the ALJ's Step Four analysis to be proper and supported by substantial evidence of record. For all of these reasons, the Court recommends that the ALJ's decision be upheld.[4]

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Hope's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[12]** be **GRANTED** and this case be **AFFIRMED**.

---

[4] Even if the ALJ had erred in relying on VE testimony at Step Four, any error in that regard would be harmless in light of the fact that the ALJ made a valid alternate Step Five finding. The ALJ found, based on Hope's age, education, vocational background, and RFC, and with the help of VE testimony, that there were a significant number of *other* jobs Hope could still perform, including hotel front desk clerk (5,100 jobs in the state), order clerk (4,700 jobs) and telemarketer (7,200 jobs). As discussed above, the ALJ made this finding by posing a hypothetical question to the VE that properly took into account Hope's credible limitations. *See Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (ALJ is only required to pose those hypothetical limitations he finds credible). As this alternative Step Five finding is supported by substantial evidence of record and unchallenged by Hope, any Step Four error is harmless.

| | |
|---|---|
| Dated: December 8, 2014<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2014.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
